UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| NOAH B. DENIOUS,<br>1452 Buckingham Gate, Unit F<br>Cuyahoga Falls, OH  44421<br><br>and<br><br>LEAON D. HINES VANTERPOOL GORDON<br>1420 South Flower St., Apt. 9<br>Los Angeles, CA 90015<br><br>            Plaintiffs,<br><br>*vs.*<br><br>CITY OF NEWTON FALLS POLICE DEPT.,<br>c/o Bradric Bryan, City Law Director<br>19 North Canal Street<br>Newton Falls, OH 44444<br><br>and<br><br>VINCENT A. LOMBARDO,<br>(In his personal and professional capacity)<br>1251 Lake Avenue<br>Aurora, OH  44202<br><br>and<br><br>OHIO STATE HIGHWAY PATROL,<br>3424 Parkman Road<br>Southington, OH  44470<br><br>and<br><br>JOHN/JANE DOE(S)<br>LAW ENFORCEMENT OFFICERS 1 through 3<br><br>            Defendants. | CASE NO: 4:22-cv-2124<br><br>JUDGE<br><br><br>**COMPLAINT**<br><br><br>**CIVIL RIGHTS VIOLATIONS**<br>**42 U.S.C §§ 1983 and 1988**<br><br>**FALSE ARREST**<br><br>**EXCESSIVE FORCE**<br><br>**MALICIOUS PROSECUTION**<br><br>**FAILURE TO INTERVENE**<br><br>**DENIAL OF MEDICAL TREATMENT**<br><br>**VIOLATION OF DUE PROCESS**<br><br>**BATTERY**<br><br>**ASSAULT**<br><br>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**CIVIL LIABILITY FOR CRIMINAL ACTS**<br><br>**DERELICTION OF DUTY**<br><br>**MONELL CLAIMS** |

COMES NOW, the Plaintiffs, Noah B. Denious and Leaon D. Hines Vanterpool Gordon, by and

through the undersigned counsel, hereby file this, their Complaint for Damages, and as grounds

for such states as follows:

## I.    JURISDICTION AND VENUE

1. This action arises under the laws of the United States, and jurisdiction is conferred on this Court under 28 U.S.C. § 1983 and 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). Supplemental jurisdiction of this Court over the claims arising under state law is conferred by 28 U.S.C. § 1367 (supplemental jurisdiction).

2. Venue in the Northern District of Ohio, Eastern Division, is proper under 28 U.S.C. § 1391(b), because it is in this District that all the Defendants reside and that all the events and omissions giving rise to Plaintiffs' claims occurred.

## II.    PARTIES

3. That at all times material hereto, the Plaintiff, Noah B. Denious ("Denious"), was a resident of Summit County, Ohio.

4. That at all times material hereto, the Plaintiff, Leaon D. Hines Vanterpool Gordon ("Gordon"), was a resident of Fairfield County, Connecticut.

5. That at all times material hereto, Defendant, City of Newton Falls Police Department ("NFPD"), was a municipal police department operating within Trumbull County, Ohio.

6. That at all times material hereto, Defendant, Vincent A. Lombardo ("Lombardo"), was a resident of Portage County, Ohio.

7. That at all times material hereto, Defendant, Lombardo, was employed as a police officer with the Defendant, NFPD.

8. That at all times material hereto, Defendant, Ohio State Highway Patrol ("OSHP"), was an agency of the State of Ohio operating within Trumbull County, Ohio.

9. Defendants John/Jane Doe(s) Law Enforcement Officers 1 through 3 ("Doe Officer(s)") were

law enforcement officers within the State of Ohio, and at all times relevant hereto acted in the capacity as agents, servants, and/or employees of Defendant NFPD and/or OSHP and within the scope of their employment. Doe Officer(s) 1 through 3 are sued in their official and individual capacity.

10. At all times relevant hereto, Defendants were acting under the color of state and local law. Defendants are sued in their individual and official capacities. At all relevant times hereto, Defendant NFPD and OSHP was responsible for making and enforcing the policies of the NFPD and OSHP and was acting under the color of law.

### III. NATURE OF THE ACTION

11. This is a civil action brought under 42 U.S.C. §§ 1983 and 1988, as well as under the laws of the State of Ohio, seeking damages for injuries sustained by Denious and Gordon, citizens of the Unites States, which arose from the conduct of the Defendants including false arrest, excessive force, malicious prosecution, failure to intervene, failure to investigate, denial of medical treatment, denial of due process, failure to train and/or supervise, battery, assault, intentional infliction of emotional distress, civil liability for criminal acts, and dereliction of duty.

### IV. FACTS

12. On September 14, 2021, at approximately 7:30 pm, Plaintiff Gordon was driving his Jeep Wrangler ("the Jeep") east on State Route 5, in the vicinity of Newton Falls, Ohio, with Plaintiff Denious in the passenger seat, when they encountered stopped traffic.

13. Plaintiff Gordon sought to circumvent the traffic by taking a detour and began driving slowly on the shoulder to reach the intersection ahead. Unbeknownst to Gordon, the cause of the traffic jam was a crash scene just west of the intersection. The accident scene was still being

    cleared by police.

14. As Plaintiff Gordon's Jeep approached the scene, officers called out to him to stop. The Jeep was traveling slowly enough that one OSHP trooper was able to radio his dispatch with the color, make and license plate number of Plaintiff Gordon's Jeep.

15. Plaintiff Gordon had reached the intersection, and proceeded slowly, at less than 10 miles per hour, to turn at the intersection, meaning to complete his intended detour.

16. Defendant Lombardo stood at the intersection directing traffic. As Plaintiff Gordon's Jeep approached, Lombardo drew his service weapon and aimed it at the Plaintiffs and threatened to shoot. Plaintiff Gordon's Jeep was still moving as he was turning north on State Route 534.

17. Defendant Lombardo then thrust his gun inside the open passenger window of the Jeep, aimed his weapon at Plaintiffs Denious and Gordon's heads and threatened to shoot them.

18. Defendant Lombardo struck Denoius in the head with his service weapon and as a result, dropped it inside the Jeep.

19. Defendant Lombardo shouted out to the OSHP troopers on the scene "they have my gun." Lombardo told OSHP troopers that his gun had been stolen by the Denious, when, in fact, he had dropped it.

20. As a result, two OSHP troopers left the accident scene in their cruisers to pursue the Jeep.

21. Plaintiffs were terrified because now there was a gun belonging to a police officer in the Jeep. They knew the officers would consider them to be armed, which placed them in grave danger of being shot by police, but they did not know what to do.

22. Plaintiff Denious decided their only hope of not being killed was to get the gun out of the Jeep and he needed to make sure the officers knew they didn't have it.

23. Despite ample opportunity to throw the gun out of the Jeep sight unseen, Denious waited until

one of the troopers was immediately behind Gordon's Jeep. He held Lombardo's service weapon out of the passenger window to ensure it was in view, then tossed it out onto the shoulder where they could easily retrieve it.

24. Plaintiff Gordon pulled the Jeep over 35 seconds later and the Plaintiffs peacefully surrendered to the police.

25. Officers from Defendant OSHP and Defendant Lombardo arrested Plaintiffs Denious and Gordon at gunpoint. As the Plaintiffs were being arrested, Plaintiff Denious told the officers he hadn't done anything, and Defendant Lombardo shouted, "you grabbed the gun from my hands."

26. Although the Plaintiffs were polite and compliant, the arresting officers repeatedly stated that they were the ones who stole an officer's gun, and they were facing a lot of jail time.

27. Plaintiff Gordon was cuffed, patted down and directed to sit in the back of a cruiser. He complied. He asked the troopers for his bible as he was told to put his feet inside the cruiser. He stated that he was not resisting and again asked for his bible. A trooper tells Gordon, "I'm going to throw you in there." Eight seconds later, Defendant Lombardo came around to the opposite side of the cruiser, reached inside and grabbed Gordon from behind by his cuffed wrists and roughly jerked him backwards by his arms across the back seat of the cruiser.

28. Defendant Lombardo can be heard on OSHP dashcam videos repeating the lie to the OSHP troopers that the passenger "reached out and took the gun out of my hand". The troopers threatened Gordon that he was facing a lot of time for F1 Robbery.

29. Defendants Lombardo, OSHP and Doe Officer(s) searched Plaintiff Gordon's Jeep without a warrant or a legal basis to do so, seized the Jeep and towed it to the OSHP Southington barracks.

30. On a date and time unknown to Plaintiff Gordon, OSHP turned the Jeep over to a private towing company, where it accrued daily storage fees.

31. Plaintiffs Denious and Gordon were eventually transported to the OSHP Southington barracks.

32. Plaintiff Denious was held in the back of a hot cruiser with little air, during which time he was confused, panicking, and crying. He told the OSHP trooper he was struck in the head so hard he should be checked for a concussion. His request for medical treatment was ignored. Finally, after nearly 2 hours he was taken into an interview room and interrogated.

33. Plaintiff Gordon was hours held in the back of a cruiser for more than two and a half hours before he was taken into an interview room and interrogated.

34. Plaintiff Denious told the OSHP investigators what happened in detail, including Defendant Lombardo struck him in the head with the gun and dropped it into the car. Denious told the investigators that he hoped there was bodycam video, which would prove he was telling the truth. Denious also said to prove he was being honest, he believed he likely had a bump on his head where he'd been struck. The investigator informed Denious that he was being told something different.

35. It was clear that in the more than 2 hours since the incident, Defendant Lombardo was still lying about how he lost his gun. OSHP investigators ignored the evidence to the contrary.

36. Based on the false claims of Defendant Lombardo, Plaintiff Denious was booked into the Trumbull County jail on charges of Aggravated Robbery, a first-degree felony, and Tampering with Evidence, a third-degree felony.

37. Based on the false claims of Defendant Lombardo, Plaintiff Gordon was booked into the Trumbull County jail on charges of Aggravated Robbery to Deprive a Law Enforcement

Officer of a Weapon, a first-degree felony, Failure to Comply with the Signal or Order of a Peace Officer, a third-degree felony, and Assault, a fifth-degree felony.

38. Defendant Lombardo was interviewed by an OSHP investigator on September 17, 2022. He admitted that he had drawn his weapon on the Plaintiffs and "punched it out" into the passenger compartment of the Jeep. He stated that his weapon dropped into the Jeep, and he did not believe the passenger forcibly took his weapon from his hands.

39. Plaintiffs Denious and Gordon were arraigned on September 16, 2021, and a bond was set at $25,000 for each. Plaintiff Denious was incarcerated in the Trumbull County jail for 2 days before his family was able to pay the bond.

40. Plaintiff Gordon was unable to afford the bond and he remained incarcerated in the Trumbull County jail for 85 days before his bond was lowered to $7,500, which he was able to post.

41. A preliminary hearing was held on September 21, 2021, in the case against Plaintiff Gordon and he was bound over to the Trumbull County Grand Jury.

42. A preliminary hearing was held on November 16, 2021, in the case against Plaintiff Denious.

43. Defendant OSHP had ample time from the time their investigator learned Defendant Lombardo's weapon had not been taken from him and that he did, in fact, drop it into the Jeep, to amend the complaint they had filed against Plaintiff Denious and failed to do so.

44. OSHP Trooper Buckner testified at the preliminary hearing that Defendant Lombardo told her at the scene that his gun had been taken from him.

45. Trooper Buckner also testified that she was the "charging officer" who drafted the complaint with the charges against Plaintiff Denious and that in addition to the Tampering with Evidence charge she prepared a complaint charging Denious with the theft of the gun. She stated that another trooper delivered the charging documents to the court and "there were other charges

that were supposed to be filed but somehow, they did not get filed."

46. Trooper Buckner testified that she did not witness the gun being taken or being thrown out of the Jeep's window and that she was not the trooper that retrieved the gun.

47. Defendant Lombardo testified at the Plaintiff Denious's preliminary hearing that he drew his weapon and "punched it out" into the Jeep's compartment with the intent to shoot the Plaintiffs.

48. The Newton Falls Municipal Court found no probable cause existed and all charges against him were dismissed.

49. The Defendants' actions resulted in physical, emotional, and psychological harm to the Plaintiffs.

50. All the injuries and damages were caused solely and proximately by the intentional and/or negligent acts of the Defendants.

## V. CLAIM ONE
### False Arrest: Violation of 42 U.S.C. § 1983

51. That the Plaintiffs re-allege and re-aver paragraphs 1 through 50 as if fully set forth herein.

52. Within the Constitution, certain rights are afforded to the Plaintiffs, Denious and Gordon including the right to be free from the deprivation of liberty without due process, and this right is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

53. This right to due process includes the right to be free from arrest without probable cause.

54. In the present case, the Plaintiffs were arrested without probable cause, as evidenced by the facts that:

   a. the third-degree felony charge of Tampering with Evidence, a violation of Ohio Revised Code 2921.12(A)(1) against Plaintiff Denious was dismissed November 16, 2021, and no additional charges were pursued by the State; and

    b.  the third-degree felony charge of Failure to Comply with the Signal or Order of a Peace Officer, a violation of Ohio Revised Code 2921.331(B)&(C)(5)(a)(ii) against Plaintiff Gordon was amended to 2921.331(A)&(C)(1)(2), a first-degree misdemeanor, for which a citation need only have been issued.

55. Furthermore, it should be noted that the false probable cause relied upon for his arrest was found to be based upon a lie, to wit, Defendant Lombardo's allegation that the Plaintiffs had stolen Lombardo's, service weapon, when it was obvious Lombardo had dropped the weapon.

56. The Defendants had neither valid evidence for the arrest of Plaintiffs nor legal cause or excuse to seize and detain them.

57. That in detaining Plaintiffs without a fair and reliable determination of probable cause, Defendant OSHP abused its power and authority under the color of state and/or local law.

58. That all of the Defendants, while acting under color of state law, intentionally, willfully, wantonly, grossly, and/or recklessly violated Plaintiffs' constitutional rights, including the right to due process under 42 U.S.C. § 1983, by falsely arresting the Plaintiffs.

59. As a direct and proximate result of the actions of the Defendants, the Plaintiffs have suffered deprivations of liberty and damages.

### VI.   CLAIM TWO
### Excessive Force: Violation of 42 U.S.C. § 1983

60. That the Plaintiffs re-allege and re-aver paragraphs 1 through 59 as if fully set forth herein.

61. That the incident that resulted from the intentional application of physical force by Defendants constituted a seizure. That the use of excessive force in effectuating the seizure was unreasonable under the circumstances.

62. That the Defendants had no legal cause or reason to use excessive force in effectuating Plaintiffs Denious and Gordon's arrest or after Plaintiffs were arrested and in custody.

63. That the Defendants violated Plaintiffs' Fourth and Fourteenth Amendment right to be free

from unreasonable seizures when they used excessive force against them.

64. That at the time of the arrest or while in custody, Plaintiffs Denious and Gordon did not pose a threat to the safety of the arresting officers.

65. That Plaintiffs were not actively resisting arrest or attempted to evade arrest.

66. That the Defendants actions were grossly disproportionate to the need for action and were unreasonable under the circumstances.

67. That by reason of the Defendants' acts and omissions, acting under color of state law and within the scope of their authority, in gross wanton disregard of Plaintiffs Denious and Gordon's rights, subjected them to excessive force while effectuating their arrests, in violation of their rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

68. That Defendants had the opportunity to intervene, and failed to do so, to prevent violations of Plaintiffs Denious and Gordon's civil rights, including but not limited to the right to be free from the application of excessive force.

69. That upon information and belief, Defendants NFPD, Lombardo, OSHP and Doe Officer(s) had a policy or routine practice of using excessive force when effectuating arrests.

70. That upon information and belief, it was the policy and/or custom of Defendant NFPD and OHSP to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

71. That as a result of the above-described policies and customs, the officers, staff, agents and employees of Defendants NFPD and OSHP, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated

or sanctioned, but would be tolerated.

72. That the above-described policies and customs demonstrate a deliberate indifference on the part of the policymakers of Defendants NFPD and OSHP to the constitutional rights of arrestees and were the cause of the violations of Plaintiffs Denious and Gordon's rights alleged herein.

73. By reason of the foregoing, Plaintiffs Denious and Gordon suffered physical injuries, mental injuries, emotional injuries, economic injury, trauma, humiliation, terror, damage to reputation, and other psychological injuries. All of said injuries may be permanent.

### VII. CLAIM THREE
### Malicious Prosecution: Violation of 42 U.S.C. § 1983

74. That the Plaintiffs re-allege and re-aver paragraphs 1 through 73 as if fully set forth herein.

75. That Defendants NFPD, Lombardo, OSHP and Doe Officer(s), with malicious intent, arrested Plaintiffs Denious and Gordon and initiated a criminal proceeding despite the evidence and knowledge that Plaintiffs had committed no crime and/or had not committed the crime that the Defendants alleged.

76. That there was no probable cause for the arrest and criminal proceeding against Plaintiff Denious and that all charges were terminated in his favor.

77. That the facts did not support the felony charges brought against Plaintiff Gordon, and the charges against him were amended to a misdemeanor offense.

78. That by reason of Defendants' acts and omissions, Defendants NFPD, Lombardo, OSHP and Doe Officer(s), acting under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiffs Denious and Gordon's rights, intended to deprive Plaintiffs Denious and Gordon of their liberty and equal protection of

the laws when they submitted false reports, illegally arrested them, initiated a criminal prosecution in bad faith and subjected them to an unlawful, illegal and excessive detention, in violation of their rights as provided by the Fourth and Fourteenth Amendments of the United States Constitution.

79. That upon information and belief, Defendants NFPD, Lombardo, OSHP and Doe Officer(s) have a policy and/or custom of maliciously prosecuting individuals despite the lack of probable cause. Thus, as a result of the above-described policies and customs, Plaintiffs Denious and Gordon were maliciously prosecuted despite the fact that they had committed no violation of the law and/or had not violated the laws alleged.

80. That upon information and belief it was the policy and/or custom of Defendants NFPD and OSHP to inadequately hire, train, supervise, discipline and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

81. That as a result of the above-described policies and customs, Defendants NFPD and OSHP, Defendants Lombardo and Doe Officer(s) as well as other staff, agents, and employees of NFPD and OSHP believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

82. That the above-described policies and customs demonstrate a deliberate indifference on the part of the policymakers of Defendants NFPD and OSHP to the constitutional rights of arrestees and were the cause of the violations of Plaintiffs Denious and Gordon's rights alleged herein.

83. That in so acting, Defendants NFPD and OSHP abused their power and authority as policymakers under the color of State and/or local law.

84. That upon information and belief, Defendants NFPD, Lombardo, OSHP and Doe Officer(s) had a policy or routine practice of alleging facts against persons for the purpose of charging crimes they did not commit.

85. That by reason of the foregoing, Plaintiffs Denious and Gordon suffered physical and psychological injuries, traumatic stress, post-traumatic stress disorder, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity. All of said injuries may be permanent.

### VIII. CLAIM FOUR
### Failure to Intervene: Violation of 42 U.S.C. § 1983

86. That the Plaintiffs re-allege and re-aver paragraphs 1 through 85 as if fully set forth herein.

87. Defendants, NFPD, Lombardo, OSHP and Doe Officer(s), a failed to intervene when Defendants knew or should have known that Plaintiffs constitutional rights were being violated.

88. That Defendants had a realistic opportunity to intervene on behalf of Plaintiffs, whose constitutional rights were being violated in their presence.

89. That a reasonable person in the Defendants' position would know that Plaintiffs' constitutional rights were being violated.

90. That by reason of Defendants' acts and omissions, Defendants, acting under the color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiffs Denious and Gordon's rights, deprived Plaintiffs of their liberty when they failed to intervene to protect Plaintiffs from Defendants' use of excessive force, the false arrest and malicious prosecution of the Plaintiffs, in violation of Plaintiffs Denious and Gordon's rights pursuant to Fourteenth Amendment of the United States Constitution.

91. That upon information and belief, Defendants had a policy and /or custom of failing to

intervene to protect citizens from excessive force, false arrest and malicious prosecution by police officers. Thus, as a result of the above-described policies and customs, Denious and Gordon were not protected from Defendants' unconstitutional actions.

92. That upon information and belief it was the policy and/or custom of Defendants NFPD and OSHP to inadequately hire, train, supervise, discipline and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents, and employees.

93. That as a result of the above-described policies and customs, Defendants NFPD and OSHP, their staff, agents and employees of Defendant NFPD and OSHP believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

94. That the above-described policies and customs demonstrate a deliberate indifference on the part of the policymakers of Defendants NFPD and OSHP to the constitutional rights of detainees and were the cause of the violations of Denious and Gordon's rights alleged herein.

95. That in so acting, Defendants NFPD and OSHP abused their power and authority as policymakers under the color of State and/or local law.

96. That by reason of the foregoing, Plaintiffs Denious and Gordon suffered physical and psychological injuries, traumatic stress, mental anguish, economic damages including attorney's fees, damage to reputation, shame, humiliation, and indignity. All of said injuries may be permanent.

### IX. CLAIM FIVE
### Denial of Medical Treatment: Violation of 42 U.S.C. § 1983

97. That the Plaintiffs re-allege and re-aver paragraphs 1 through 96 as if fully set forth herein.

98. While Plaintiff Denious was in Defendant OSHP's custody, Defendants denied Denious

access to medical care for injuries caused by Defendant Lombardo during the arrest.

99. Defendants OSHP and Doe Officer(s) denied needed medical care to Denious because of deliberate indifference to Denious's injury and need for medical attention.

100. By reason of Defendants acts and omissions, Defendants NFPD, Lombardo, OSHP and Doe Officer(s), acting under color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff Denious's rights, deprived Denious of his liberty when they denied him medical care while Denious was in their custody, in violation of his due process rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and the laws of the State of Ohio.

101. That in so acting, Defendants abused their power and authority as policymaker under the color of State and/or local law.

102. That upon information and belief, Defendants OSHP and Doe Officer(s) have a policy or routine practice of denying medical care to detainees in their custody.

103. That upon information and belief, it was the policy and/or custom of Defendant OSHP to inadequately train and supervise their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

104. That as a result of the above-described policies and customs, the officers, staff, agents and employees of Defendant OSHP believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

105. That the above-described policies and customs demonstrate a deliberate indifference on the part of the policymakers of Defendant OSHP to the constitutional rights of arrestees

and were the cause of the violations of Denious's rights alleged herein.

106. That Defendant OSHP, through its officers, agents and employees, unlawfully denied Denious medical care while he was in their custody.

107. By reason of the foregoing, Plaintiff Denious suffered physical injuries, economic injury, mental injuries, deprivation of liberty and privacy, terror, humiliation, damage to reputation and other psychological injuries. All of said injuries may be permanent.

108. As a result of the aforementioned Defendants' actions, the Plaintiff is entitled to recover damages pursuant to 42 U.S.C. § 1983.

## X. CLAIM SIX
**Due Process Violations of Fourth Amendment Rights: Violation of 42 U.S.C. § 1983**

109. That the Plaintiffs re-allege and re-aver paragraphs 1 through 108 as if fully set forth herein.

110. That Defendants searched Plaintiff Gordon's Jeep forcefully, without a warrant or legal basis to do so.

111. That said search of Plaintiff Gordon's Jeep was made without exigent circumstances.

112. That said warrantless search and seizure of Plaintiff Gordon's private property and violated Gordon's rights.

113. By reason of Defendants acts and omissions, Defendants NFPD, Lombardo, OSHP and Doe Officer(s), acting under color of state law and within the scope of their authority, in gross and wanton disregard of Gordon's rights, searched and seized Gordon's personal property without providing due process under the law, in violation of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the laws of the State of Ohio.

114. By reason of the foregoing, Plaintiff Gordon suffered mental injuries, economic injury, deprivation of property, liberty and privacy, terror, humiliation, damage to

16

reputation and other psychological injuries. All of said injuries may be permanent.

## XI.　CLAIM SEVEN
### Battery

115.　That the Plaintiffs re-allege and re-aver paragraphs 1 through 114 as if fully set forth herein.

116.　That on or about September 14, 2021, Defendant, Lombardo perpetrated a harmful or offensive touching against Plaintiff Denious, to wit, struck him in the head with his service weapon.

117.　That on or about September 14, 2021, Defendant Lombardo perpetrated a harmful or offensive touching against Plaintiff Gordon, to wit, after he was arrested, subdued and handcuffed, yanked his already handcuffed arms behind his back forcefully, pulling the full weight of his body by his wrists.

118.　That as a result of the Defendant's actions, the Plaintiffs Denious and Gordon have incurred damage to their physical person and are entitled to recover damages in tort for same.

## XII.　CLAIM EIGHT
### Assault

119.　That the Plaintiffs re-allege and re-aver paragraphs 1 through 118 as if fully set forth herein.

120.　That on or about September 14, 2021, Defendant Lombardo intentionally effectuated imminent apprehension of immediate bodily harm against the Plaintiffs Denious and Gordon by aiming a gun at their heads and threatening to shoot them.

121.　The threats of violence at or near the time of the tortious battery previously pled, resulted in damages to Plaintiffs Denious and Gordon, for which they are entitled to recover in tort for same.

## XIII.    CLAIM NINE
**Intentional Infliction of Emotional Distress**

122. That the Plaintiffs re-allege and re-aver paragraphs 1 through 121 as if fully set forth herein.

123. That the Defendants' actions, when taken as a whole, to wit, the battery and assault referenced above, false arrest, the resulting denial of medical treatment, unnecessarily long physical restraint, interrogation, and resulting trauma associated with same constitute extreme and outrageous conduct that shocks the conscious.

124. Defendants' behavior was intentional and/or with reckless disregard for societal norms such that same is the very definition of intentional infliction of emotional distress and, as such, Plaintiffs are entitled to recover for damages resulting from same.

## XIV.    CLAIM TEN
**Civil Liability for Criminal Acts Under Ohio Rev. Code §§ 2307.60 (A)(1) and 2921.45
(Violation of Civil Rights)**

125. That the Plaintiffs re-allege and re-aver paragraphs 1 through 124 as if fully set forth herein.

126. Under Ohio Rev. Code § 2307.60 (A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorneys' fees and punitive damages.

127. Criminal statute Ohio Rev. Code § 2921.45 forbids public servants from depriving any person of a constitutional or statutory right.

128. Defendants acted under color of office, employment, and authority to knowingly deprive Plaintiffs of their civil rights, including his constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

129. In so doing, Defendants acted in violation of Ohio's criminal law, specifically Ohio Rev.

Code § 2921.45.

130. As a direct and proximate result of Defendants' unlawful activity, Plaintiffs have suffered and continue to suffer economic and non-economic damages for which Defendants are liable to them.

131. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct in future.

132. Plaintiffs are entitled to recover damages for the Defendants' actions.

### XV.  CLAIM ELEVEN
### Civil Liability for Criminal Acts Under Ohio Rev. Code §§ 2307.60 (A)(1) and 2921.44(E)— Dereliction of Duty

133. That the Plaintiffs re-allege and re-aver paragraphs 1 through 132 as if fully set forth herein.

134. Ohio Rev. Code § 2921.44(E) provides that "[n]o public servant shall recklesslyfail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office."

135. Defendants recklessly failed to perform duties expressly imposed on them by law, including providing full and complete information in, or for others to use in, grand jury testimony, adequately establishing probable cause before arresting Plaintiffs and abstaining from violating constitutional rights. In so doing, Defendants acted in violation of Ohio's criminal law, specifically Ohio Rev. Code § 2921.44(E).

136. As a direct and proximate result of Defendants' unlawful activity, Plaintiffs suffered and continue to suffer economic and non-economic damages for which Defendants are liable to them.

137. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct in future.

138. Plaintiffs are entitled to recover damages for Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, Noah B. Denious and Leaon D. Hines Vanterpool Gordon demand judgment in their favor as follows:

A. Enter judgment in favor of the Plaintiffs on all claims for relief;

B. Award the Plaintiffs full compensatory damages against all Defendants in an amount in excess of $25,000;

C. Award Plaintiffs the costs incurred in this action and reasonable attorneys' fees under 42 U.S.C. § 1988;

D. Award pre-judgment interest;

E. Award any and all other relief that the Court deems just and proper.

Respectfully submitted,

*/s/ Sarah Thomas Kovoor*
Sarah Thomas Kovoor (0069223)
Kovoor Law, LLC
P.O. Box 310
Warren, OH 44482
T: (330) 974-1212 | F: (330) 974-1220
E: office.klaw@gmail.com
*Attorney for Plaintiffs*

Plaintiffs demand a trial by jury on all claims so triable.

*/s/ Sarah Thomas Kovoor*
Sarah Thomas Kovoor
Kovoor Law, LLC