PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NOAH B. DENIOUS, *et al.*, | ) | |
| | ) | CASE NO. 4:22-CV-2124 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CITY OF NEWTON FALLS POLICE DEPT., *et al.*, | ) | |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF No. 18] |

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. *See* ECF No. 18. Plaintiffs filed a Response in opposition. *See* ECF No. 19. Defendants filed a Reply in support of their Motion. *See* ECF No. 20. For the reasons set forth below, the Court grants the Motion.

**I.     Background**

On September 14, 2021, Plaintiff Gordon drove his Jeep Wrangler eastbound on State Route 5 toward its intersection with State Route 534, while Plaintiff Denious rode in the (front) passenger seat. ECF No. 17 at ¶ 12-13. Plaintiffs approached a line of stopped traffic on State Route 5. Gordon, rather than wait, attempted to avoid the traffic by driving on the right-hand shoulder of the road around the line of cars to reach State Route 534. ECF No. 17 at ¶ 13. Unknown to Gordon, an accident had occurred and was still being cleared by the Newton Falls Police Department and the Ohio State Highway Patrol ("OSHP"). ECF No. 17 at ¶ 13. This law enforcement action had caused the stopped traffic that Gordon was determined to avoid. ECF No. 17 at ¶ 13.

(4:22CV2124)

Plaintiffs allege that Gordon approached the intersection of State Routes 5 and 534 driving less than 10 miles an hour. ECF No. 17 at ¶ 14. Defendant, Officer Vincent Lombardo ("Lombardo"), stood in the intersection, directing traffic, and as Gordon's Jeep approached Lombardo, Plaintiffs allege Lombardo drew his "authorized service sidearm, aimed it at Gordon and Denious, verbally threatening to shoot them." ECF No. 17 at ¶ 16. As Gordon doggedly continued his turn onto State Route 534, Lombardo reached his gun into Gordon's Jeep and allegedly hit Denious in the head with his weapon. ECF No. 17 at ¶ 17-18. Lombardo then allegedly dropped his weapon into the Jeep. ECF No. 17 at ¶ 18. Plaintiffs, apparently undeterred, drove off with the officer's loaded firearm inside of Gordon's Jeep. ECF No. 17 at ¶ 23.

After Lombardo lost possession of his weapon, he yelled "they [meaning Gordon and Denious] have my gun." ECF No. 17 at ¶ 19. Lombardo allegedly told OSHP Trooper Eric Golias that Denious had stolen Lombardo's firearm. ECF No. 17 at ¶ 20. Gordon continued down State Route 534 with the firearm inside his Jeep and with OSHP Trooper Kristopher Conaway following. ECF No. 17 at ¶ 23. Despite being aware of the officer in pursuit and their possession of Lombardo's firearm, Gordon did not stop. Defendants categorized this pursuit as a "chase." ECF No. 18 at PageID #: 183. While the Jeep continued moving, Denious, the passenger, eventually discarded the loaded firearm onto the shoulder of a public road. ECF No. 17 at ¶ 23. Trooper Conaway radioed his dispatcher to notify other Troopers that the gun had been discarded. ECF No. 17 at ¶ 24. Trooper Brent Hartley secured the weapon. ECF No. 17 at ¶ 24.

About 35 seconds after Denious discarded the weapon, Gordon pulled his Jeep over. ECF No. 17 at ¶ 25. OSHP Troopers Buckner, Conaway, and Golias, and Lombardo arrived and

2

(4:22CV2124)

allegedly arrested Plaintiffs at gunpoint.  ECF No. 17 at ¶ 26.  Plaintiffs also allege Lombardo grabbed Plaintiff Gordon by his cuffed wrists and forcefully pulled him into an OSHP cruiser. ECF No. 17 at ¶ 29.

After the arrest, OSHP transported Plaintiffs to the OSHP Southington Barracks.  ECF No. 17 at ¶ 32.  While waiting in the OSHP cruiser, Denious informed an OSHP trooper that he had been hit in the head and requested medical care.  ECF No. 17 at ¶ 33.  The trooper ignored Denious's ask for medical assistance.  ECF No. 17 at ¶ 33.  After about two hours Denious was taken from the OSHP cruiser to an interview room.  ECF No. 17 at ¶ 34.  After roughly two and a half hours Gordon was taken from the OSHP cruiser to an interview room.  ECF No. 17 at ¶ 35.

OSHP Troopers Daniel Jesse and Michael Royco conducted an initial investigation, taking statements from Plaintiffs.  ECF No. 17 at ¶ 36.  After the initial investigation, the OSHP booked Denious into the Trumbull County Jail on charges of Aggravated Robbery, a first-degree felony, and Tampering with Evidence, a third-degree felony.  ECF No. 17 at ¶ 38.  Gordon was booked into the Trumbull County Jail on charges of Aggravated Robbery to Deprive a Law Enforcement Officer of a Weapon, a first-degree felony, Failure to Comply with the Signal or Order of a Peace Officer, a third-degree felony, and Assault, a fifth-degree felony.  ECF No. 17 at ¶ 39.  Plaintiffs were arraigned on September 16, 2021.  ECF No. 17 at ¶ 42.

At Denious's preliminary hearing, the Newton Falls Municipal Court found that no probable cause existed against Denious and all charges against him were dismissed.  ECF No. 17 at ¶ 47.  Plaintiffs' Second Amended Complaint fails to provide any information about the charges against Gordon.  According to public records, Gordon was found guilty of a first-degree

3

(4:22CV2124)

misdemeanor of failing to comply with the order or signal of a police officer (ORC § 2921.331(B)). Trum. Cty. Case No. 2021-CR-805.

## II. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citations omitted). A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it suggests more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). "[When] the well-pleaded

4

(4:22CV2124)

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

On a motion made under Rule 12(b)(6), the Court's inquiry is generally limited to the content of the complaint, "although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account without converting the motion to one for summary judgment." *Ira Svendsgaard & Assoc., Inc. v. AllFasteners USA, LLC*, No. 1:20 CV 328, 2021 WL 4502798, at *3 (N.D. Ohio Oct. 1, 2021) (Nugent, J.) (citing *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)).

### III. Discussion

#### A. False Arrest

Defendants argue Plaintiffs' false arrest claim should be dismissed because the Second Amended Complaint fails to demonstrate how officers lacked probable cause to arrest Plaintiffs. ECF No. 18 at PageID #: 185. In response, Plaintiffs admit "OSHP Troopers would have had, at most, cause to issue Gordon a citation for a misdemeanor charge of failure to stop." ECF No. 19 at PageID #: 199.

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)). An individual can be arrested for committing a misdemeanor offense. An officer can arrest an

5

(4:22CV2124)

individual if the officer has "probable cause to believe that a misdemeanor offense has been committed in his presence." United States v. Campbell, 486 F.3d 949, 958 (6th Cir. 2007) (quoting United States v. Williams, 170 Fed. App'x 399, 402 n.3 (6th Cir. 2006)).

In this case, officers witnessed Gordon drive through an accident scene after officers had ordered him to stop, failing to comply with an order or signal of a police officer in violation of ORC § 2921.331. ECF No. 17 at ¶ 14-17. Gordon then drove away from the scene with an officer's gun inside of his car. ECF No. 17 at ¶ 19, 23. Plaintiffs even admit they could have received a citation for a misdemeanor. ECF No. 19 at PageID #: 199. Because an individual can be arrested for a misdemeanor committed in the presence of an officer, Gordon's false arrest claim fails.

The officers also had probable cause to believe Denious committed had a crime. Denious discarded a loaded weapon out of the window of a moving vehicle. ECF No. 17 at ¶ 23. Minimally, Denious's actions could be construed as disorderly conduct. Tossing a loaded firearm out of a car window onto a public road "presents a risk of physical harm to persons or property, by [an] act that serves no lawful and reasonable purpose of the offender." ORC § 2917.11. The officers, therefore, had probable cause to arrest Denious for that offense alone.[1] Additionally, Plaintiffs continued driving knowing the loaded weapon was inside of their vehicle. ECF No. 17 at ¶ 23. For their part, the officers had reason to believe that Plaintiffs were unlawfully carrying a loaded firearm, accessible to the passenger, Denious, in violation of ORC § 2923.16. Accordingly, officers had probable cause to arrest Denious.

---

[1] As the defense points out, "[p]robable cause requires only the probability of criminal activity not some type of 'prima facie' showing." ECF No. 18 at Page ID # 185, n.40 (citing "the Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty.") (citations omitted).

6

(4:22CV2124)

Because Defendants had probable cause to arrest Plaintiffs, the Court grants Defendants' Motion to Dismiss on Plaintiffs' false arrest claim.

### B. Excessive Use of Force

Defendants argue Plaintiffs' excessive force claims should be dismissed because Plaintiffs fail to "identify any instances where [Defendant] used force during or after the arrest, aside from [Defendant] pulling on Plaintiff Gordon's handcuffs." ECF No. 18 at PageID #: 188. Plaintiffs do not directly respond to Defendants' contention, but write in their Response

> Contrary to the Defendant representations in their Motion to Dismiss, *Id.* at 8-9, the allegations of ¶ 29 are that, at the time Lombardo hauled Gordon into an OSHP cruiser by his handcuff chain, Gordon was not resisting the officers but was, in fact, continuously asserting his compliance with them. The reasonableness *velnon* of Lombardo's use of force is, therefore, a fact that will require the trier of fact to make a determination at trial.

ECF No. 19 at PageID #: 199.

"[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). The officer's actions must be "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "Once a suspect is passively complying with an officer's commands, that suspect has a clearly established right to be free from force beyond what is necessary to carry out the arrest." *Cole v. City of Dearborn*, 448 F.App'x 571, 576 (6th Cir. 2011). "Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Id.* "In determining whether there has been a violation of the Fourth Amendment, we consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010).

7

(4:22CV2124)

Additionally, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396.

Plaintiffs allege Lombardo knew or should have known that the application of physical force used by Lombardo in making the seizure of Plaintiffs was grossly unreasonable under the circumstances. ECF No. 17 at ¶ 59. Plaintiffs do not present any facts to explain what force used during the seizure was unreasonable. The only fact Plaintiffs present regarding force is when Lombardo pulled Gordon into the OSHP cruiser. ECF No. 17 at ¶ 29. Gordon had been handcuffed, patted down, and directed to sit in the back of the OSHP cruiser. ECF No. 17 at ¶ 29. Gordon resisted. He did not place his feet in the cruiser, instead, he stayed put and asked for his Bible. ECF No. 17 at ¶ 29. Plaintiffs allege that Lombardo walked to the other side of the cruiser, grabbed Gordon by his cuffed wrists, "and roughly and painfully jerked him backward by his arms across the back seat of the cruiser." ECF No. 17 at ¶ 29.

Plaintiffs fail to allege any facts that might be considered "gratuitous violence." Even under a more extreme set of facts, the Sixth Circuit has held that when an officer "assisted [the Plaintiff] into the vehicle even though his assistance may not have been necessary, and that in the process, [Defendant] lifted up on Plaintiff's handcuffs, tearing Plaintiff's rotator cuff and causing him extreme pain—Plaintiff fail[ed] to allege a Fourth Amendment violation." Toner v. Vill. Of Elkton, 547 F.App'x 720, 727-728 (6th Cir. 2013). The Sixth Circuit explained that the plaintiff had not alleged anything that might be considered "gratuitous violence." Id. at 727. Similarly, here, Plaintiffs do not allege gratuitous force used as Lombardo assisted Gordon into the OSHP cruiser. Therefore, Plaintiffs did not adequately plead that Lombardo's use of force was objectively unreasonable.

8

(4:22CV2124)

Accordingly, the Court finds that Plaintiffs have not alleged a Fourth Amendment claim of excessive force at this stage of the litigation and dismisses Plaintiffs' excessive force claim.

### C. Malicious Prosecution

*1. Defendants did not Participate in the Decision to Prosecute*

Defendants argue the Court should dismiss Plaintiffs' malicious prosecution claim because "the Complaint fails to detail how Lombardo participated in the decision to prosecute." ECF No. 18 at PageID #: 189. While Plaintiffs do not address Defendants' argument for dismissal of the malicious prosecution claim directly, Plaintiffs suggest that the "OSHP Troopers involved were not acting on the basis of their own knowledge, but solely on information created by and relayed to them by Lombardo." ECF No. 19 at PageID #: 199.

A § 1983 claim for malicious prosecution requires:

> (1) A criminal prosecution was initiated against the plaintiff, and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure, and (4) the criminal proceeding was resolved in the plaintiff's favor.

*King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017) (citing *Sykes v. Anderson*, 625 F.3d 294, 309-310 (6th Cir. 2010)). The defendant is required to have played a role in or influenced initiating a prosecution. *Sykes*, 625 F.3d at 311. A prosecutor's independent charging decision normally breaks the causal chain for a malicious prosecution claim. *Novak v. City of Parma, Ohio*, 33 F.4th 296, 307 (6th Cir. 2022). The only exception is when an officer could "reasonably foresee that his misconduct" would result in an independent decision to prosecute the plaintiff. *Id.* (citing *Sykes*, 625 F.3d at 316). In *Johnson v. Moseley*, the Sixth Circuit found that Plaintiff did not allege that the officers "participated in the investigation after his arrest," "testified falsely or recklessly," or "'pressed' for prosecution in any non-neutral or blameworthy

9

(4:22CV2124)

way," so their 'neutral' participation was not enough to sustain a facially valid malicious prosecution claim. 790 F.3d 649, 655 (6th Cir. 2015).

Plaintiffs fail to adequately plead that Defendants made, influenced, or participated in the decision to prosecute. Plaintiffs merely write that Lombardo "made false statements against them, caused false reports to be submitted against them… [and] caused them to be prosecuted in bad faith." ECF No. 17 at ¶ 73. Plaintiffs fail to plead any facts about a false report made or statements a prosecutor relied on when deciding to initiate a prosecution. While Plaintiffs allege that Lombardo told OSHP Troopers that Plaintiffs had stolen his firearm ( ECF No. 17 at ¶ 28), Plaintiffs fail, however, to connect that statement to the decision to prosecute. Additionally, during the investigation Lombardo admitted "he did not believe Denious forcibly took his weapon out of his hand." ECF No. 17 at ¶ 40. This admission punctuates Plaintiffs' failure to allege Denious supplied false information during the investigation, testified falsely or recklessly, or pressed the prosecution in a non-neutral way. Accordingly, the Court finds that Plaintiffs did not provide enough facts to adequately plead a malicious prosecution claim. The Court grants Defendants' Motion to Dismiss for Plaintiffs' malicious prosecution claim.

2. *Criminal Proceeding Not Resolved in Plaintiff's Favor*

Additionally, Defendants argue that Gordon's malicious prosecution claim should be dismissed because Plaintiffs do not plead that Gordon's criminal proceedings were resolved in his favor. According to public records, Gordon's criminal proceedings were not resolved in his favor. Gordon was found guilty of a first-degree misdemeanor of failing to comply with the order or signal of a police officer (ORC § 2921.331(B)). Trum. Cty. Case No. 2021-CR-805. Therefore, in the alternative, the Court dismisses Gordon's malicious prosecution claim because the underlying criminal proceedings were not resolved in his favor.

10

(4:22CV2124)

### D. Denial of Medical Treatment

Defendants argue Plaintiffs denial of medical treatment claim should be dismissed because Plaintiffs fail to assert the basic elements required under a claim of denial of medical treatment. ECF No. 18 at PageID #: 190. Plaintiffs do not respond directly to Defendants' argument. *See* ECF No. 19.

The Sixth Circuit has recently articulated the standard of a deliberate indifference claim under the Fourteenth Amendment brought by a pretrial detainee.

> A plaintiff must demonstrate (1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or "recklessly failed to act reasonably to mitigate the risk the serious medical need posed." *Greene v. Crawford County*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Brawner v. Scott County*, 14 F. 4th 585, 597 (6th Cir. 2021), *cert. denied*, ___ U.S. ___, 143 S. Ct. 84, 214 L.Ed.2d 13 (2022)). Stated differently, a pretrial detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and the risk it presented to the detainee. *See Helphenstine* 60 F.4th at 317.

*Grote v. Kenton Cnty., Kentucky*, 85 F.4th 397, 405 (6th Cir. 2023).

*1. Objectively Serious Medical Need*

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). For "minor maladies or non-obvious complaints of a serious need for medical care," verifying medical evidence is required. *Id.* at 898.

The only injury alleged by Plaintiffs is Denious telling "OSHP Trooper Buckner he had been struck in the head so violently that he should be checked for a concussion." ECF No. 17 at ¶ 33. Denious does not allege he showed any signs or symptoms that would indicate he had a concussion. There are no factual allegations indicating that Defendants should have recognized

11

(4:22CV2124)

the need for a doctor's attention. Denious also does not provide any medical evidence or allege that he was later diagnosed with a concussion or any unmet serious medical need arising from the encounter. Accordingly, Denious fails to plead he had an objectively serious medical need.

2. *Reckless Disregard*

Even if Denious had a serious medical need, Defendants did not recklessly disregard the medical need because Defendants lacked knowledge of Plaintiff's medical need. Denious told OSHP Trooper Buckner, not Defendants, that he "should be checked for a concussion." ECF No. 17 at ¶ 33. Defendants did not witness Plaintiff Denious experience any medical distress. *See Grote*, 85 F.4th at 410 (holding a nurse recklessly disregarded Plaintiff's serious medical need after witnessing him experience obvious medical distress). Because Defendants were not told of any medical need nor did Defendants witness Denious experience any medical distress, Defendants did not recklessly disregard a serious medical need. The Court grants Defendants' Motion to Dismiss the Denial of Medical Treatment claim.

**E. Violations of Due Process**

Defendants argue Plaintiffs' 42 U.S.C. § 1983 due process claim should be dismissed because Plaintiffs "fail to assert that Defendant Lombardo participated in, or had knowledge of, the search of Plaintiff Gordon's vehicle." ECF No. 18 at PageID #: 191. Again, Plaintiffs do not directly respond, but in their Response generally reiterate that "the OSHP Troopers involved were not acting on the basis of their own knowledge but solely on information created by and relayed to them by Lombardo." ECF No. 19 at PageID #: 199.

"An officer's 'mere presence' at the scene of an arrest fails to establish § 1983 liability." *Alexander*, 733 F.App'x at 267. In the Second Amended Complaint Plaintiffs fail to set forth any evidence that Defendant Lombardo knew of the search, participated in the search, or directed

(4:22CV2124)

the search. Plaintiffs merely write that Lombardo "instigated and proximately caused OSHP Troopers forcefully to search Gordon's Jeep." ECF No. 17 at ¶ 91. Plaintiffs cannot solely rely on this bare conclusion. Plaintiffs must set forth some factual allegations that show Lombardo was responsible or participated in the search. "Mere presence" is not enough, and Plaintiffs do not even allege Lombardo was present.

Accordingly, the Court dismisses Plaintiffs' due process claim.

### F. Official Capacity

Officer Vincent Lombardo and the City of Newton Falls ("CNF") are the only remaining defendants. Plaintiffs sue Defendants CNF and Lombardo in their individual and official capacities. ECF No. 17 at ¶ 9. Plaintiffs also allege "CNF is vicariously liable under the principle of *respondeat superior* for Lombardo's acts." ECF No. 17 at ¶ 50.

Suits brought against local officers in their official capacities are treated, "in all respects other than name," as suits against the government entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). As a preliminary rule, local governments cannot be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. "To establish municipal liability pursuant to § 1983, a plaintiff must allege an unconstitutional action that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or a 'constitutional deprivation [] visited pursuant to governmental custom even though such a custom has not received formal approval through the

13

(4:22CV2124)

body's decision-making channels.'" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Monell*, 436 U.S. at 690-91). To survive a motion to dismiss, a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state of law, and (3) that a municipality's policy or custom caused that violation to happen. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

As indicated above, the Court has dismissed all claims of a violation of a federal or constitutional right. "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Accordingly, the Court dismisses all federal claims against Defendant Lombardo in his official capacity and all federal claims against the CNF.

### G. IIED

Defendants claim Plaintiffs fail to plead the basic elements to establish an intentional infliction of emotional distress ("IIED") claim for three reasons: (1) Plaintiffs fail to assert that Defendant intended to cause serious emotional distress; (2) Plaintiffs fail to allege any action taken by Lombardo that would be seen as beyond all bounds of human decency; and (3) Plaintiffs fail to allege any injuries caused by Defendant. ECF No. 18 at PageID #: 193. Plaintiffs respond by providing a list of facts recited in the Second Amended Complaint but fail to specifically address Defendants' argument for dismissal of the intentional infliction of emotional distress claim. ECF No. 19 at PageID #: 198-199.

Under Ohio law, for a claim of intentional infliction of emotional distress, a plaintiff must show:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3)

14

(4:22CV2124)

> defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

Talley v. Fam. Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting Ekunsumi v. Cincinnati Restoration, Inc., 120 Ohio App. 3d 557, 698 N.E.2d 503, 506 (1997)).

The Court does not need to analyze every element of the IIED claim because the claim fails at element four: that plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. In Ohio, "'serious emotional anguish' is an exacting standard." Doe v. BMG Sports, LLC, 584 F. Supp. 3d 497, 508 (S.D. Ohio 2022). The Sixth Circuit has noted the demanding Ohio standard, writing the Ohio Supreme Court has required an emotional injury which is both "severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." 180 Indus., LLC v. Brunner Firm Co. LPA, No. 20-4129, 2021 WL 4955268, at *2 (6th Cir. July 13, 2021) (citing Paugh v. Hanks, 451 N.E.2d 759, 765 (Ohio 1983)). Examples include "traumatically induced neurosis, psychosis, chronic depression, or phobia." Id.

Here, Plaintiffs claim they have suffered "psychological harm," "mental and emotional injuries, … trauma, humiliation, terror, ... anxiety, and other psychological injuries," "traumatic stress, post-traumatic stress disorder, … shame," and "emotional trauma." See ECF No. 19 at PageID #: 168, 171, 172, 174, and 176. Plaintiffs fail, however, to allege how these harms are "severe and debilitating" to the point they are "unable to cope." See, e.g., Doe, 584 F. Supp. 3d at 508 (dismissing Plaintiffs' IIED claim after Plaintiffs failed to provide "factual specificity explaining how they 'suffered serious psychological injury' in a manner so extreme they are 'unable to cope'"); Swartz v. Di Carlo, No. 1:12CV3112, 2015 WL 1022073, at *7 (N.D. Ohio

15

(4:22CV2124)

Mar. 6, 2015) (explaining Plaintiffs alleged no facts of medical treatment, phobia, severe loss of the ability to eat, sleep, work, etc., to support a claim of IIED). Because Plaintiffs fail to allege facts that support a claim of IIED, the Court dismisses Plaintiffs' claims of IIED against Lombardo in both his official and individual capacity.

### H. Statute of Limitations

*1. Assault, Battery, Libel, and Slander*

Defendants argue Plaintiffs' claims of battery, assault, defamation (slander and libel), and civil liability for criminal acts including violation of civil rights and dereliction of duty all fall outside of the applicable one-year statute of limitations. ECF No. 18 at PageID #: 194. Plaintiffs respond by arguing the statute "begins to run when the plaintiff both knows of, and is able to bring, an action for redress of his injuries." ECF No. 19 at PageID #: 200. Because Gordon was held in the Trumbull County Jail for 85 days, Plaintiffs argue that the statute of limitations did not begin to run until December 11, 2021, instead of September 17, 2021. ECF No. 19 at PageID #: 200.

Ohio law provides that an action for assault or battery shall be brought within one year after the cause of action accrues, and the cause of action accrues upon the date on which the alleged assault of battery occurred. Ohio Rev. Code § 2305.111(B). An action for libel or slander must be commenced within one year after the cause of action accrued, and the action accrues after the words are spoken or published. Ohio Rev. Code § 2305.11(A); *Gentry v. The Renal Network*, 636 F. Supp. 2d 614, 617 (N.D. Ohio 2009); *StarForce Nat'l Corp. v. Transcor, Inc.,* No. 1:10-CV-84, 2010 WL 11639831, at *5 (S.C. Ohio Dec. 15, 2010).

16

(4:22CV2124)

The events underlying the claims of assault, battery, and defamation, occurred on September 14, 2021. ECF No. 17 at ¶ 12. Pursuant to statute, Plaintiffs had one year to bring these claims, but they did not bring this action until November 22, 2022. *See* ECF No. 1. Plaintiffs retort that "the statute of limitations does not run against one who has been prevented, without his own fault, from bringing his action." ECF No. 19 at PageID #: 200.

To the extent Plaintiffs raise equitable tolling, "the doctrine of equitable tolling is to be applied sparingly and only in exceptional circumstances." *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106, 2022 WL 2211529, at *2 (Ohio Ct. App. June 21, 2022). "A litigant seeking equitable tolling must demonstrate he diligently pursued his rights, but some extraordinary circumstance stood in his way and prevented timely action." *Id.* "The doctrine is generally limited to circumstances in which a litigant is intentionally misled or tricked into missing the filling deadline." *Id.*

Plaintiffs have not presented extraordinary circumstances preventing them from taking timely action. Plaintiffs argue that Gordon was held in jail for 85 days, depriving him of time to retain and consult an attorney. ECF No. 19 at PageID #: 200. Gordon, however, still would have had access to the legal system, even while in jail, and additionally, he had 280 days upon release to pursue these claims. No excuse is made for Denious' supiness. Accordingly, the Court does not find extraordinary circumstances existed entitling Plaintiffs to equitable tolling. Therefore, the Court grants Defendants' Motion to Dismiss Plaintiffs' claims of assault, battery, and defamation.

2. *Civil Liability for Criminal Acts*

The statute of limitations for civil liability for criminal acts claims, ORC § 2307.60, is not provided by statute, but Defendants cite case law that holds the statute of limitations is one year.

17

(4:22CV2124)

ECF No. 18 at PageID #: 194.  Plaintiffs fail to provide an argument or case law advancing a different, longer statute of limitations.  The Court declines to address the statute of limitations question as to these claims.  Because the Court has dismissed all federal claims, the Court declines to exercise jurisdiction over any remaining state law claims.  28 U.S.C. § 1367(c)(3); *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012).  Accordingly, Plaintiffs' claims for civil liability for criminal acts, ORC §§ 2307.60(A)(1), 2921.45 and ORC §§ 2307.60(A)(1), 2921.44(E) are dismissed without prejudice.

### IV.     Conclusion

For the reasons set forth above, the Court grants Defendants' Motion to Dismiss. Any state law claims not explicitly resolved herein are dismissed without prejudice, given that all federal claims are dismissed and the Court declines to exercise jurisdiction over any remaining state law claims.

IT IS SO ORDERED.

| March 19, 2024 | /s/ Benita Y. Pearson |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |